UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:22-CV-00092-GNS-HBB

MYLES MINOR                                          PLAINTIFF

v.

GREYHOUND LINES, INC.                            DEFENDANT

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendant's Motion to Disqualify (DN 29) and Plaintiff's Motion for Leave to File Sur-Reply (DN 35). The motions are ripe for adjudication. For the reasons stated below, the motions are **DENIED**.

### I.      BACKGROUND

This action arises out of injuries sustained when Plaintiff Myles Minor ("Minor") was injured on October 8, 2021, in a collision between a Kia Sorento driven by Third-Party Defendant Barbara Estes ("Estes") and a bus parked in the roadway, which was operated by Defendant Greyhound Lines, Inc. ("Greyhound"). (Compl. ¶¶ 5-7, DN 1-1; Def.'s Mot. Leave File Third-Party Compl. Ex. A, at 2-8, DN 10-1). Minor was a passenger on the Greyhound bus driven by Jackie Norman ("Norman") which had become disabled and was stopped in the roadway. (Def.'s Mot. Disqualify Ex. C, at 2, DN 29-4; Def.'s Mot. Leave File Third-Party Compl. Ex. A, at 3, 8). Minor had exited and was walking behind the bus when he was struck by the vehicle operated by Estes. (Def.'s Mot. Disqualify Ex. C, at 2; Def.'s Mot. Leave File Third-Party Compl. Ex. A, at 3, 8).

On November 15, 2021, Minor retained the law firm of Morgan & Morgan, Kentucky, PLLC ("Morgan & Morgan") to represent him in pursuing claims relating to his personal

1

injuries. (Lester Aff. ¶ 2, DN 32-1). Attorney Taryn Kelli Lester ("Lester") in Morgan & Morgan's Bowling Green office has been handling the matter and is counsel of record for Minor. (Lester Aff. ¶ 2, DN 32-1). On April 25, 2022, Bradley Fyffe (Fyffe"), an attorney with the law firm of Lewis, Brisbois, Bisgaard & Smith, LLP, wrote a prelitigation letter to Lester to inform her that his law firm would be representing both Greyhound and Norman in this matter.[1] (Def.'s Mot. Disqualify Ex. B, at 2, DN 29-3; Fyffe Aff. ¶ 3, DN 29-6).

On June 2, 2022, Minor filed suit against Greyhound only in Warren Circuit Court (Kentucky) asserting state law claims of common law negligence and statutory negligence. (Compl. ¶¶ 5-10). In particular, Minor alleged that "agents and employees of Greyhound . . . negligently operated and parked a Greyhound bus in a negligent, careless and reckless manner while they were in the course and scope of their employment with Greyhound . . . ." (Compl. ¶ 5). Greyhound filed an answer and removed the action to this Court. (Notice Removal, DN 1; Answer, DN 1-1). Greyhound then filed the Third-Party Complaint against Estes, asserting claims for common law indemnity, contribution, and apportionment.[2] (3d Party Compl. ¶¶ 17-43, DN 19).

During the pendency of this action, Norman retained Morgan & Morgan to represent him in an unrelated personal injury action in Alabama state court after discharging his initial attorney on February 10, 2023. (Pl.'s Resp. Def.'s Mot. Disqualify 3; Pl.'s Resp. Def.'s Mot. Disqualify Ex. B, at 3, DN 32-2). That action arose out of a separate collision while Norman was driving a

---

[1] Greyhound has admitted that Norman was acting the course and scope of his employment at the time of Minor's injury. (Def.'s Mot. Disqualify Ex. C, at 2).
[2] While all discovery is not filed in the record, there is an indication that Morgan & Morgan's written discovery requests reflect that it knew of Norman's identity as the Greyhound bus driver by early December 2022. (Def.'s Reply Mot. Disqualify Ex. A, at 1, DN 34-1).

Greyhound bus in Alabama in June 2021. (Pl.'s Resp. Def.'s Mot. Disqualify Ex. C, at 5, DN 32-3).

On May 12, 2023, Minor was deposed. (Def.'s Mot. Disqualify Ex. A, DN 29-2 [hereinafter Minor Dep.]). During Minor's deposition, he testified that the bus driver (Norman) failed to give any instructions to Minor as he exited the disabled bus and that the driver had improperly placed the orange reflective triangles too close to the back of the disabled bus. (Minor Dep. 43:9-11, 44:21-45:17, 56:22-57:5). Minor also testified that he could not see the reflective triangles from the convenience store across the street. (Minor Dep. 57:15-20).

On May 18, 2023, Morgan & Morgan filed a lawsuit on Norman's behalf in Alabama state court to recover for his injuries from the June 2021 collision.[3] (Pl.'s Resp. Def.'s Mot. Disqualify 3 (footnote omitted); Pl.'s Resp. Def.'s Mot. Disqualify Ex. C, at 2-16, DN 32-3). That action is still pending, and Morgan & Morgan continues to represent Norman in that action. (Def.'s Mot. Disqualify Ex. I, at 2-4, DN 29-10).

On or about June 16, 2023, Lester requested potential deposition dates for Norman, and Fyffe attempted to reach Norman to discuss his availability. (Def.'s Mot. Disqualify Ex. D, at 4, DN 29-5; Fyffe Aff. ¶ 4). The call, however, was returned by Attorney Bernie Brannan ("Brannan"), who is employed by Morgan & Morgan in its Birmingham, Alabama, office. (Fyffe Aff. ¶ 4). Brannan advised Fyffe that Norman was also a client of Morgan & Morgan. (Fyffe Aff. ¶ 5).

On June 19, 2023, Fyffe emailed Lester to inform her of the concurrent representation, to which she responded, "[w]ell that is news to me." (Def.'s Mot. Disqualify Ex. D, at 2). Lester

---

[3] There also appears to be some confusion relating to another lawsuit filed in Alabama state court. In this third lawsuit filed in June 2023, both Norman and Greyhound are named parties, which arises out of the same collision as Norman's Alabama lawsuit. (Def.'s Mot. Disqualify Ex. G, at 2, 4, DN 29-8; Pl.'s Resp. Def.'s Mot. Disqualify Ex. C, at 5).

3

conceded that she was unaware of her firm's concurrent representation of Norman in the Alabama matter until that point. (Lester Aff. ¶¶ 2-3). However, Lester has asserted that she has neither accessed Norman's client file nor spoken with Brannan about either matter, and she "will not share either profits or fees with Mr. Brannon [sic] for either case." (Lester Aff. ¶¶ 4-5, 7-8).

On June 29, 2023, the parties filed a proposed agreed order resetting litigation deadlines. (Agreed Mot. Extension Deadlines 1, DN 27). In support of the request, the parties noted that "Plaintiff will need additional time to locate new counsel due to a conflict of interest that has arisen placing a hold on current discovery efforts." (Agreed Mot. Extension Deadlines 1).

In early July 2023, Morgan & Morgan requested and obtained written waivers of the direct conflict of interest from both Minor and Norman. (Def.'s Mot. Disqualify Ex. H, at 2-9, DN 29-9). At some point—presumably before the conflict waivers were obtained—Morgan & Morgan retained the law firm of Dinsmore & Shohl, LLP ("Dinsmore"), to advise it regarding the ethical conflict. (Def.'s Mot. Disqualify Ex. I, at 3). In a letter dated August 11, 2023, to Fyffe from Dinsmore Attorney Joseph Tucker ("Tucker"), Tucker took the position that:

> Under [Kentucky] [and Alabama's] ethical rules, once Morgan & Morgan sought to take Mr. Norman's deposition in the Greyhound litigation, an ethical conflict did arise at that time because, by taking Mr. Norman's deposition, Mr. Minor and Morgan & Morgan would be directly adverse to Mr. Norman—a fact witness in the Greyhound litigation. *See* Rule 1.7 cmt. 6 ("a directly adverse conflict may arise when a lawyer is required to cross-examine a client who appears as a witness in a lawsuit involving another client . . ."). After a directly adverse conflict arose between Morgan & Morgan taking Mr. Norman's deposition in the Greyhound litigation and its representation of Mr. Norman in the unrelated Alabama litigation, Morgan & Morgan took appropriate action to comply with its ethical obligations.

(Def.'s Mot. Disqualify Ex. I, at 3). He reasoned that the conflict was remedied when both Minor and Norman executed the written waivers, and he noted the efforts taken by Morgan & Morgan to protect each client.[4] (Def.'s Mot. Disqualify Ex. I, at 3-4).

Greyhound has moved to disqualify Morgan & Morgan, which Minor opposes. (Def.'s Mot. Disqualify, DN 29; Pl.'s Resp. Def.'s Mot. Disqualify, DN 32). Minor has moved for leave to file a sur-reply to the motion.[5] (Pl.'s Mot. Leave File Sur-Reply, DN 35). To the extent that the Court is inclined to grant Greyhound's motion, Minor asserts that an evidentiary hearing is required. (Pl.'s Resp. Def.'s Mot. Disqualify 20).

## II.  JURISDICTION

This Court has jurisdiction over "any civil action brought in a State court of which the district courts of the United States have original jurisdiction" that is "removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). This Court has "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . the citizens of different States." 28 U.S.C. § 1332(a)(1).

---

[4] As a result of Greyhound's motion, Morgan & Morgan requested and obtained revised written waivers from Minor and Norman. (Pl.'s Resp. Def.'s Mot. Disqualify Ex. E, at 2-4, DN 32-5; Pl.'s Resp. Def.'s Mot. Disqualify Ex. F, at 2-4, DN 32-6).

[5] While the response to Greyhound's motion (DN 32) and the motion for leave to file a sur-reply (DN 35) purport to be filed by Minor, these filings were made by the law firm of Dinsmore & Shohl as counsel for Morgan & Morgan. Dinsmore & Shohl, however, has only entered a limited entry of appearance on behalf of Morgan & Morgan and has not entered an appearance for Minor in this action. (Notice Appearance 1, DN 33). Therefore, it is not clear whether the response and sur-reply are offered on behalf of Minor, Morgan & Morgan, or both.

### III. DISCUSSION

#### A. Defendant's Motion to Disqualify

"A motion to disqualify counsel is the proper method for a party to bring to the Court's attention an alleged conflict of interest by opposing counsel." *Institutional Labor Advisors, LLC v. Allied Res., Inc.*, No. 4:12CV-00044-JHM, 2012 WL 12996182, at *1 (W.D. Ky. Dec. 6, 2012) (citing *DeBiasi v. Charter Cnty. of Wayne*, 284 F. Supp. 2d 760, 770 (E.D. Mich. 2003)). A party moving for the disqualification of opposing counsel bears the burden of proof to show that disqualification is necessary. *See Bartech Indus., Inc. v. Int'l Baking Co., Inc.*, 910 F. Supp. 388, 392 (E.D. Tenn. 1996) (citing *A.J. by L.B. v. Kierst*, 56 F.3d 849 (8th Cir. 1995)). However, disqualification of counsel is a "drastic measure" that "courts should be hesitant to impose except when absolutely necessary. Disqualification separates a party from the counsel of its choice with immediate and measurable effect." *Zurich Ins. Co. v. Knotts*, 52 S.W.3d 555, 560 (Ky. 2001), *as amended* (Aug. 29, 2001) (citing *Univ. of Louisville v. Shake*, 5 S.W.3d 107 (Ky. 1999)); *see also Packaged Ice Antitrust Litig. v. Arctic Glacier, Inc.*, Nos. 08-01952 & 10-11689, 2010 WL 5146384, at *2 (E.D. Mich. Dec. 13, 2010) ("'[A] party's right to have counsel of choice is a fundamental tenet of American jurisprudence, and therefore a court may not lightly deprive a party of its chosen counsel.'" (alteration in original) (quoting *Am. Special Risk Ins. Co. ex rel. S. Macomb Disposal Auth. v. City of Centerline*, 69 F. Supp. 2d 944, 953 (E.D. Mich. 1999))). In considering a motion to disqualify, "courts must balance the interests of the public in the proper safeguarding of the judicial process together with the interests of each party to the litigation." *Hamrick v. Union Twp.*, 81 F. Supp. 2d 876, 878 (S.D. Ohio Jan. 12, 2000) (quoting *Gen. Mill Supply Co. v. SCA Servs., Inc.*, 697 F.2d 704, 711 (6th Cir. 1982)). "The Court has broad discretion when deciding whether counsel for a party before it should be disqualified."

*Institutional Labor Advisors*, 2012 WL 12996182, at *1 (citing *Moses v. Sterling Com. (Am.), Inc.*, 122 F. App'x 177, 183-84 (6th Cir. 2005)).

"A violation of the rules of professional ethics . . . does not automatically necessitate disqualification of an attorney." *El Camino Res., Ltd. v. Huntington Nat'l Bank*, 623 F. Supp. 2d 863, 875-76 (W.D. Mich. 2007) (citing *SST Castings, Inc. v. Amana Appliances, Inc.*, 250 F. Supp. 2d 863, 865 (S.D. Ohio 2002)). Rather, "the extreme sanction of disqualification should only be utilized when there is a 'reasonable possibility that some specifically identifiable impropriety' actually occurred, and where the public interest in requiring professional conduct by an attorney outweighs the competing interest of allowing a party to retain counsel of his choice." *El Camino Res.*, 623 F. Supp. 2d at 875 (quoting *Woods v. Covington Cnty. Bank*, 537 F.2d 804, 810 (5th Cir. 1976)); *see also Manning v. Waring, Cox, James, Sklar & Allen*, 849 F.2d 222, 224 (6th Cir. 1988).

### 1. *Standing*

As a preliminary matter, Minor challenges the standing of Greyhound to seek the disqualification. (Pl.'s Resp. Def.'s Mot. Disqualify 8-11). In particular, Minor contends that Greyhound lacks standing to challenge any ethical conflict arising from the law firm's concurrent representation of Minor and Norman. (Pl.'s Resp. Def.'s Mot. Disqualify 8-11).

Minor's efforts to challenge the ability of this Court to consider the issues raised in Greyhound's motion are not well-taken in light of Morgan & Morgan's concession that there is a direct conflict between Minor and Norman. Regardless of whether Greyhound has standing, "it has long been recognized that federal courts have the inherent power to evaluate the professional conduct of attorneys practicing before them, and to sanction unprofessional conduct, including disqualification of attorneys." *Carlsen v. Thomas*, 159 F.R.D. 661, 663 (E.D. Ky. 1994) (citing

7

*Insituform of N. Am., Inc. v. Midwest Pipeliners, Inc.*, 139 F.R.D. 622, 624 (S.D. Ohio 1991)); *see also Winchester v. Educ. Mgmt. Corp.*, No. 5:10-CV-00012-TBR, 2010 WL 2521465, at *2 (W.D. Ky. June 18, 2010) (stating that nonclient standing where "an ethical violation was 'open and obvious,' confronting the court with a 'plain duty to act.'" (quoting *FMC Techs., Inc. v. Edwards*, 420 F. Supp. 2d 1153, 1156 (W.D. Wash. 2006))); *Institutional Labor Advisors*, 2012 WL 12996182, at *1 (noting that this power is "'incidental to all courts, and is necessary for the preservation of decorum, and for the respectability of the profession.'") (quoting *S.D. Warren Co. v. Duff-Norton*, 302 F. Supp. 2d 762, 766 (W.D. Mich. 2004)). The Court's local rules also contemplate that it may take appropriate action against attorneys who engage in unprofessional and improper conduct in violation of the Kentucky Rules of Professional Conduct ("KRPC"), SCR-3.130. *See* LR 83.3(c). Therefore, the Court has both the authority and responsibility to address any ethical issues arising from the direct conflict due to Morgan & Morgan's concurrent representation of Minor and Norman, and a motion to disqualify is the proper means of raising this issue. *See Johnson v. Kroger Co.*, No. 2:18-CV-1240, 2020 WL 6440258, at *2 (S.D. Ohio Nov. 3, 2020) (citation omitted).

    **2.**    *Necessity of a Hearing*

Relying upon the Sixth Circuit's decision in *Melamed v. ITT Continental Baking Co.*, 534 F.2d 82 (6th Cir. 1976), Minor asserts that an evidentiary hearing is required before the Court rules on Greyhound's motion. (Pl.'s Resp. Def.'s Mot. Disqualify 20 (citing *Melamed*, 534 F.2d at 85)). His reliance on *Melamed*, however, is misplaced. "Although earlier cases in the Sixth Circuit required the District Court to conduct an evidentiary hearing on a motion to disqualify counsel, more recent decisions have held that *Melamed*'s directive to conduct an evidentiary

hearing is not absolute." *Carlsen*, 159 F.R.D. at 664 (internal citation omitted) (citations omitted). As a sister court has noted:

> The Sixth Circuit Court of Appeals does not require an evidentiary hearing to be held upon every motion for disqualification but does require a "factual inquiry" that is conducted in a manner that will allow for appellate review. To forgo a hearing, a court must review affidavits and documents that would be acceptable under Rule 56(e) and must "not undertake to decide disputed issues of fact."

*Jones v. Univ. of Memphis Tenn. Bd. of Regents*, No. 2:15-CV-02148-JPM-cgc, 2016 WL 6590330, at *2 (W.D. Tenn. Oct. 19, 2016) (internal citation omitted) (quoting *Gen. Mill Supply*, 697 F.2d at 710); *see also Carlsen*, 159 F.R.D. at 664 (citing *Gen. Mill Supply*, 697 F.2d at 710-11). The Court has reviewed the affidavits and other documents in the record and is satisfied that there are no material factual disputes; therefore, an evidentiary hearing is not required to address Greyhound's motion.[6]

   3.  *Analysis*

Whether an attorney practicing before this Court has violated an ethical rule is a question of federal law. *See In re Snyder*, 472 U.S. 634, 645 n.6 (1985). Attorneys practicing in this Court are subject to the KRPC. *See Encore Energy, Inc. v. Morris Ky. Wells, LLC*, No. 1:18-CV-00180-GNS-HBB, 2019 WL 2011062, at *1 (W.D. Ky. May 6, 2019) ("'The ethical standards by which federal courts measure an attorney's professional conduct are standards

---

[6] Minor also relies on *Marcum v. Scorsone*, 457 S.W.3d 710 (Ky. 2015), in arguing that a hearing is required. (Pl.'s Resp. Def.'s Mot. Disqualify 20). Because this Court applies federal procedural law in diversity cases, a hearing is not required based on Sixth Circuit precedent. *See Hoven v. Walgreen Co.*, 751 F.3d 778, 783 (6th Cir. 2014) ("Under the *Erie* doctrine, in diversity cases we apply the substantive law of the forum state and federal procedural law." (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938); *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996))). Nevertheless, in *Marcum*, the Kentucky Supreme Court held that an evidentiary hearing is required to determine whether an actual conflict of interest exists. *See Marcum*, 457 S.W.3d at 718. Because Morgan & Morgan has acknowledged that there is a direct conflict between Minor and Norman, no hearing is necessary to make that determination. (Def.'s Mot. Disqualify Ex. I, at 3).

9

defined by federal law.'  Attorneys that practice in the Western District of Kentucky must follow the standards set forth in the Rules for Professional Conduct as adopted by the Kentucky Supreme Court."  (internal citation omitted) (citing *Harper v. Everson*, No. 3:15-CV-00575-JHM, 2016 WL 9149652, at *3 (W.D. Ky. May 5, 2016); LR 83.1 to 83.3; SCR-3.130)).  In addressing the merits of Greyhound's motion, the Court must determine whether:  (i) Morgan & Morgan had a direct conflict between two concurrent clients; and (ii) if there is a direct conflict, appropriate conflict waivers were obtained or whether the conflict was nonconsentable.  *See* SCR 3.130-1.7.

### a. Rule 1.7(a)

Before an attorney may be disqualified from representing a client, there must be an actual conflict.  *See Marcum*, 457 S.W.3d at 718 ("Before a lawyer is disqualified based on a relationship with . . . existing clients, the complaining party should be required to show an actual conflict, not just a vague and possibly deceiving appearance of impropriety.  And that conflict should be established with facts, not just vague assertions of discomfort with the representation.").  In relevant part, Rule 1.7 of the KRPC provides:

> Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest.  A concurrent conflict of interest exists if:
> (1) the representation of one client will be directly adverse to another client; or
> (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

SCR 3.130-1.7(a).

In this instance, Morgan & Morgan has conceded that it has a direct conflict in concurrently representing Minor and Norman, to which Rule 1.7 applies.  (Def.'s Mot.

10

Disqualify Ex. I, at 3; Def.'s Mem. Supp. Mot. Disqualify 6-8; Pl.'s Resp. Def.'s Mot. Disqualify 5).

### b. Rule 1.7(b)

Notwithstanding the conflict, Rule 1.7 provides:

[A] lawyer may represent a client if:
(1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
(2) the representation is not prohibited by law;
(3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and
(4) each affected client gives informed consent, confirmed in writing. The consultation shall include an explanation of the implications of the common representation and the advantages and risks involved.

SCR 3.130-1.7(b).

In the conflict waivers sent to both Minor and Norman on behalf of Morgan & Morgan, Lester and Brannan expressed their belief that they would be able to provide competent and diligent representation to their respective clients. (Def.'s Mot. Disqualify Ex. H, at 4-5, 8; Pl.'s Resp. Def.'s Mot. Disqualify Ex. E, at 3; Pl.'s Resp. Def.'s Mot. Disqualify Ex. F, at 3). Because nothing in the record otherwise contradicts their assertion, Rule 1.7(b)(1) has been satisfied. In addition, the representation of Minor and Norman is not prohibited by law, which satisfies Rule 1.7(b)(2).

Of considerable importance, no claims have been asserted against Norman by Minor, and the Alabama litigation in which Norman is represented by Brannan is wholly unrelated to Minor's injury in Kentucky. Therefore, Rule 1.7(b)(3) is met.

The final portion of Rule 1.7(b)(4) is the focus on the parties' arguments. Minor argues that the conflict was remedied because Morgan & Morgan obtained informed consent from both Minor and Norman to continue to continue their representation. (Pl.'s Resp. Def.'s Mot.

Disqualify 11-16). Greyhound objects to the timeliness[7] and sufficiency of the waivers. (Def.'s Mem. Supp. Mot. Disqualify 8-10; Def's Reply Mot. Disqualify 7-8).

The KRPC defines the term "informed consent" as being "the agreement by a person to a proposed course of conduct after the lawyer has communicated adequate information and explanation about the material risks of and reasonably available alternatives to the proposed course of conduct." SCR 3.130-1.0(e); *see also El Camino Res.*, 623 F. Supp. 2d at 882 ("To be sufficient, the disclosure of risks must be 'in such detail that the person can understand the reasons why it may be desirable to withhold consent.' As the Restatement puts it, 'informed consent requires that the client or former client had reasonably adequate information about the material risks of such representation to that client or former client.'" (internal citation omitted) (quoting Restatement (Third) of the Law Governing Lawyers § 122(1) (2000))). As the relevant commentary to SCR 3.130-1.0 notes:

> The communication necessary to obtain such consent will vary according to the Rule involved and the circumstances giving rise to the need to obtain informed consent. The lawyer must make reasonable efforts to ensure that the client or other person possesses information reasonably adequate to make an informed decision. Ordinarily, this will require communication that includes a disclosure of the facts and circumstances giving rise to the situation, any explanation reasonably necessary to inform the client or other person of the material advantages and disadvantages of the proposed course of conduct and a discussion of the client's or other person's options and alternatives. In some circumstances it may be appropriate for a lawyer to advise a client or other person to seek the advice of other counsel. A lawyer need not inform a client or other person of facts or implications already known to the client or other person; nevertheless, a lawyer who does not personally inform the client or other person assumes the risk that the client or other person is inadequately informed and the consent is invalid. In determining whether the information and explanation provided are reasonably adequate, relevant factors include whether the client or other person is experienced in legal matters generally and in making decisions of the type involved, and whether the client or other person is independently represented by

---

[7] The timeliness of the discovery of the conflict and obtaining the waivers is more appropriately addressed in terms of the potential prejudice resulting from Morgan & Morgan being permitted to continue to represent both Minor and Norman.

> other counsel in giving the consent. Normally, such persons need less information and explanation than others, and generally a client or other person who is independently represented by other counsel in giving the consent should be assumed to have given informed consent.

SCR 3.130-1.0 cmt. 6; *see also* SCR 3.130-1.7 cmt. 18 ("Informed consent requires that each affected client be aware of the relevant circumstances and of the material and reasonably foreseeable ways that the conflict could have adverse effects on the interests of that client. *See* Rule 1.0(e) (informed consent). The information required depends on the nature of the conflict and the nature of the risks involved."). "[P]roviding to the client anything less than full information runs the risk that the client is inadequately informed, thereby making any consent invalid." *CenTra, Inc. v. Estrin*, 538 F.3d 402, 415 (6th Cir. 2008). As the party opposing disqualification, Minor has the burden of establishing that the disclosures made by Morgan & Morgan to Norman and Minor were sufficient to waive the direct conflict. *See El Camino Res.*, 623 F. Supp. 2d 863 at 882 (citing *Glidden Co. v. Jandernoa*, 173 F.R.D. 459, 480 (W.D. Mich. 1997); *Gen. Cigar Holdings, Inc. v. Altadis, S.A.*, 144 F. Supp. 2d 1334, 1338 (S.D. Fla. 2001)).

The initial waiver letters were signed by Norman and Minor in July 2023. (Def.'s Mot. Disqualify Ex. H, at 4-9). After Greyhound moved to disqualify Morgan & Morgan, the firm obtained revised waiver letters from both clients.[8] (Pl.'s Resp. Def.'s Mot. Disqualify Ex. E, at 2-4; Pl.'s Resp. Def.'s Mot. Disqualify Ex. F, at 2-4).

Greyhound argues that the revised waiver letters were insufficient for the direct conflict to be waived. (Def.'s Mem. Supp. Mot. Disqualify 7-8). In particular, it takes issue with Morgan & Morgan's representation to both clients that the conflict was not discovered until during discovery in this case, but as the record reflects, Morgan & Morgan had been put on

---

[8] Minor does not point to or identify any significant differences between the sets of waiver letters.

notice by a prelitigation letter that Greyhound's counsel also represented Norman in this action, and Norman's identity was included in Morgan & Morgan's written discovery requests. (Def.'s Mem. Supp. Mot. Disqualify 7; Def.'s Mot. Disqualify Ex. B, at 2; Def.'s Reply Mot. Disqualify Ex. A, at 1). While Morgan & Morgan disagrees about the timing of discovering the conflict, it has not pointed to any evidence refuting Greyhound's contention that Norman's identity had been known to the firm in 2022.

As to Minor's waivers, Greyhound asserts that the waivers are defective because: (i) while Morgan & Morgan states that it has no intention of suing Norman, it fails to explain that Morgan & Morgan may have to name Norman as an adverse party in Minor's lawsuit if Morgan & Morgan continued its representation; and (ii) it fails to inform Minor of the ethical issues relating to the cross-examination of Norman. (Def.'s Reply Mot. Disqualify 7, DN 34). Regarding Norman's waivers, Greyhound contends these are also defective because: (i) while Morgan & Morgan expressed its intent not to sue Norman, the firm failed to advise him of the possibility that the firm has a duty to pursue claims against him to the extent supported by the evidence; (ii) Morgan & Morgan failed to inform Norman of the ethical issues relating to his cross-examination in this case; (iii) Morgan & Morgan failed to inform him that it was seeking to impose liability on Greyhound for Norman's actions on the day of the accident; and (iv) Morgan & Morgan failed to advise Norman that his conduct in the Alabama accident is at issue in this case. (Def.'s Reply. Mot. Disqualify 8).

While Minor has the burden of showing that the waivers were sufficient, he never directly addresses his burden to show how the waivers are sufficient to satisfy the requirements

14

of informed consent.[9]  Based on the Court's review, however, the waivers appear to be sufficient. The waivers do mention that Norman will be deposed by Lester and that Morgan & Morgan has not and does not intend to pursue claims against him.  Additionally, the deadline to amend the pleadings and join additional parties in this action expired on October 17, 2022—long before the conflict waivers were signed.  As to Minor's waivers, Greyhound's disagreement about Morgan & Morgan's characterization of when the conflict was discovered does not invalid his waivers.

Accordingly, these waivers were sufficient to advise Morgan and Norman of the information needed to waive the potential conflict of interest arising from Morgan & Morgan's representation of both clients.

### c.   Nonconsentability

Greyhound also asserts that the conflict between Minor and Norman could not be waived. (Def.'s Mem. Supp. Mot. Disqualify 6-8).  As the Sixth Circuit has noted, "it is not true that all conflicts are consentable.  Whether a conflict is consentable depends upon the facts of the case." *CenTra*, 538 F.3d at 413.

As the commentary to SCR 3.130-1.7 explains:

> (14)   Ordinarily, clients may consent to representation notwithstanding a conflict.  However, as indicated in paragraph (b), some conflicts are nonconsentable, meaning that the lawyer involved cannot properly ask for such agreement or provide representation on the basis of the client's consent.  When the lawyer is representing more than one client, the question of consentability must be resolved as to each client.
> (15)   Consentability is typically determined by considering whether the interests of the clients will be adequately protected if the clients are permitted to give their informed consent to representation burdened by a conflict of interest.  Thus, under paragraph (b)(1), representation is prohibited if in the circumstances the lawyer cannot reasonably conclude that the lawyer will be able to provide competent and diligent representation.

---

[9] Despite the criticism of the sufficiency of the waivers raised in Greyhound's reply, Minor's proposed sur-reply does not seek to address the language of the waivers.

SCR 3.130-1.7 cmts. 14-15 (citations omitted). That fact that two clients of the same law firm "are not directly adverse parties in a *lawsuit* is not determinative." *CenTra*, 538 F.3d at 413.

Morgan & Morgan's representation of Norman in the Alabama litigation relates to injuries he suffered while operating a Greyhound bus. As Greyhound notes, Morgan & Morgan "will need to obtain information related to Greyhound policies and procedures, safety issues and programs, training, driver qualifications and other personal information related to his employment."[10] (Def.'s Mem. Supp. Mot. Disqualify 7). This information, however, would be needed in any action arising from Norman's operation of a bus on behalf of Greyhound—whether as a named party or an agent of Greyhound. Therefore, the overlap in discoverable information does not render the conflict nonconsentable in this matter.

### d. Prejudice

Finally, Greyhound asserts that it has been prejudiced by Morgan & Morgan's failure to timely identify the conflict. (Def.'s Mem. Supp. Mot. Disqualify 10-12). As this Court has noted, "[t]he rule of imputed disqualification charges lawyers with the conflicts of their colleagues within a firm. The imputation rule presumes that confidential information about clients is shared or generally available to all lawyers in a firm." *Harper v. Everson*, No. 3:15-CV-00575-JHM, 2016 WL 9149652, at *4 (W.D. Ky. May 4, 2016) (citing *United States v. Kilpatrick*, 798 F.3d 365, 375 (6th Cir. 2015)). This presumption of shared confidences, however, is rebuttable. *See id.* at *5 (citations omitted).

Minor has tendered the affidavits of Lester and Brannan, which are pertinent to this issue. While the affidavits are largely identical, the affidavits reflect that: (i) the attorneys have not

---

[10] While Greyhound also references a cross-claim, Miles clarifies that the cross-claim has been asserted in another Alabama case in which Norman is a defendant. (Def.'s Mem. Supp. Mot. Disqualify 7; Pl.'s Resp. Def.'s Mot. Disqualify 3 (citing Def.'s Mot. Disqualify Ex. G)).

16

accessed the files of each other's clients; (ii) they have not discussed and will not discuss the cases with each other; (iii) Morgan & Morgan's ethical screen prohibits the attorneys from accessing each other's file; and (iv) neither attorney will share in the profits or fees from each other's case. (Lester Aff. ¶¶ 4-7; Brannan Aff. ¶¶ 4-7). Greyhound has not identified any information that was actually shared as a result of that delay or presented any evidence to rebut these affidavits. Thus, despite the lack of a justification for the delay in identifying and addressing the direct conflict between two current clients of Morgan & Morgan, Minor has presented sufficient evidence to rebut this presumption.

Minor also asserts that Greyhound cannot prove actual prejudice. (Pl.'s Resp. Def.'s Mot. Disqualify 16-18). Relying on *University of Louisville v. Shake*, Minor misstates one of the case's holdings and erroneously argues "that a party moving to disqualify opposing counsel must show actual prejudice from the representation . . . ." (Pl.'s Resp. Def.'s Mot. Disqualify 16). Minor contends that there is a lack of any actual prejudice to Greyhound if Morgan & Morgan were permitted to continue to represent both clients. (Pl.'s Resp. Def.'s Mot. Disqualify 16-18). In *Shake*, the Kentucky Supreme Court stated that courts must "primarily assess the *possibility of prejudice at trial that might result from the attorney's unethical act*." *Shake*, 5 S.W.3d at 110 (emphasis added) (citing *Shoney's, Inc. v. Lewis*, 875 S.W.2d 514, 516 (Ky. 1994)). Any doubt as to prejudice should "be resolved in favor of disqualification." *Shoney's*, 875 S.W.2d at 516 (internal quotation marks omitted) (quoting *Papanicolaou v. Chase Manhattan Bank, N.A.*, 720 F. Supp. 1080, 1083 (S.D.N.Y. 1989)).

When the possibility of prejudice is considered here, it weighs against disqualification. As noted above, Greyhound has failed to show that confidential information was shared between Morgan & Morgan's attorneys. The Court also rejects the contention that the fact that the

17

Kentucky and Alabama litigation arise out of Norman's employment as a driver for Greyhound is evidence of prejudice to Greyhound. As noted above, Norman's work and accident history and Greyhound's policies and procedures are necessarily going to be discoverable in both cases, but that alone does not reflect any prejudice. Minor would also potentially be prejudiced in having to retain new counsel in this litigation. Under these circumstances, disqualification is not warranted. *See City of Kalamazoo v. Mich. Disposal Serv. Corp.*, 125 F. Supp. 2d 219, 245 (W.D. Mich. 2000) ("Plaintiffs have not presented the court with affidavits or other factual materials establishing the likelihood of hardship if their attorneys are disqualified. The court may nevertheless presume that any party forced to retain new counsel midway in litigation will face expense and delay as a result.").

For these reasons, Greyhound's motion is denied.

### B.      Minor's Motion for Leave to File Sur-Reply

Minor has moved for leave to file a sur-reply. (Pl.'s Mot. Leave File Sur-Reply 1, DN 35). Neither the Federal Rules of Civil Procedure nor the Court's local rules permit the filing of sur-replies. "As many courts have noted, '[s]ur-replies . . . are highly disfavored, as they usually are a strategic effort by the nonmoving party to have the last word on a matter.'" *Liberty Legal Found. v. Nat'l Democratic Party of the USA, Inc.*, 875 F. Supp. 2d 791, 797 (W.D. Tenn. 2012) (citation omitted).

Minor asserts that his sur-reply is necessary to respond to the prejudice argument first raised by Greyhound in its reply. (Pl.'s Mot. Leave File Sur-Reply 1-2). In his response to Greyhound's motion, however, Minor was the one that raised the issue of prejudice, and it was proper for Greyhound to address Minor's arguments. (Pl.'s Resp. Def.'s Mot. Disqualify 16-18).

18

Because sur-replies are highly disfavored and Minor's proposed sur-reply is an improper attempt to have the last word on the issue of prejudice that Minor first raised, this motion is denied.

## V.     CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendant's Motion to Disqualify (DN 29) and Plaintiff's Motion for Leave to File Sur-Reply (DN 35) are **DENIED**.

Greg N. Stivers, Chief Judge
United States District Court

March 28, 2024

cc:    counsel of record

19